# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### April 22, 2016 Session

## MLG ENTERPRISES, LLC v. RICHARD L. JOHNSON

**Appeal from the Court of Appeals
Chancery Court for Williamson County**

No. 35543     **Timothy L. Easter, Circuit Judge sitting as Chancellor**

---

**No. M2014-01205-SC-R11-CV – Filed September 2, 2016**

---

We granted permission to appeal in this case to determine whether the individual who signed a commercial lease agreement on behalf of the corporate tenant also agreed to be personally liable for the tenant's obligations when he signed the agreement a second time. Over a dissenting opinion, the Court of Appeals held that the individual's second signature did not personally bind him because he handwrote "for Mobile Master Mfg. LLC" after his name. We hold that the second signature, which followed a paragraph clearly indicating that the parties agreed that the individual would be personally responsible for the tenant's obligations, was effective to bind the individual. Accordingly, we reverse the Court of Appeals' judgment and remand this matter for further proceedings consistent with this opinion.

### Tenn. R. App. P. 11; Judgment of the
### Court of Appeals Reversed; Remanded

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

J. Brad Scarbrough and Chris Holleman, Brentwood, Tennessee, for the appellant, MLG Enterprises, LLC.

L. Marshall Albritton and Frank M. Gallina, Nashville, Tennessee, for the appellee, Richard L. Johnson.

# OPINION

## Factual and Procedural History

On October 1, 2007, MLG Enterprises, LLC ("Landlord") entered into a written agreement for the lease of commercial real estate to Mobile Master Manufacturing LLC ("Tenant"). On the eighteenth page of the agreement ("the Lease"), the last numbered paragraph provides as follows:

37. PERSONAL LIABILITY:

> In consideration of Landlord entering into this Lease with Tenant, Richard L. Johnson hereby agrees that he shall be personally liable for all of Tenant's obligations under this Lease and executes this Lease for this purpose.

Immediately following this paragraph, the Lease provides "**IN WITNESS WHEREOF**, Landlord and Tenant have respectively signed this Lease on the dates and the places set forth below." Three spaces for signatures follow this text.

The first signature space, located on the right side of the Lease, provides "LANDLORD: **MLG ENTERPRISES LLC**" followed by a signature line preceded by "By:." This signature line bears the handwritten signature of Michael L. Griffith. Directly below the signature line appears the typed text "Michael L. Griffith President/Owner." The typed text "EXECUTED BY LANDLORD, THIS ___ DAY OF OCTOBER, 2007" appears opposite the signature space on the left side of the Lease.

The second signature space, located on the right side of the Lease and below the first signature space, provides "TENANT: **MOBILE MASTER MANUFACTURING LLC**" followed by a signature line preceded by "By:." This signature line bears the handwritten signature of Richard L. Johnson followed by the handwritten indication "(C.E.O.)." Directly below the signature line appears the typed text "Richard L. Johnson President/Owner." The typed text "EXECUTED BY Tenant, THIS ___ DAY OF OCTOBER, 2007" appears opposite the signature space on the left side of the Lease.

The third signature space, located on the right side of the Lease and below the second signature space, provides a signature line beneath which appears the typed text "Richard L. Johnson." On this line is the handwritten signature "Richard L. Johnson" followed by the handwritten words "for Mobile Master Mfg. LLC." To the left of this signature appears the typed text "EXECUTED BY Richard L. Johnson, THIS ___ DAY OF OCTOBER, 2007."

On February 6, 2009, Landlord filed a complaint against Tenant and Richard L. Johnson ("Johnson") alleging that Tenant "abandoned" the leased premises on or about October 10, 2008, thereby breaching the Lease. Landlord sought damages from Tenant and, claiming a "breach of the personal guaranty agreement in the Lease," from Johnson.

Tenant did not file a response to the complaint, and Landlord obtained a default judgment. Johnson responded and denied personal liability for Tenant's obligations under the Lease. The matter proceeded to a bench trial, after which the trial court dismissed Landlord's claims against Johnson.[1] We quote here the relevant portions of the trial court's ruling:

5. Upon consideration of the signed Lease and the applicable legal precedent, this Court rules as a matter of law that Defendant Johnson is not personally liable for the obligations in the Lease because he did not sign the Lease in an individual, personal capacity. Based upon the holdings in Cone Oil, 84 Lumber and Creekside Partners, the signature reading "Richard L. Johnson for Mobile Masters Manufacturing, LLC" has the presumptive effect of being a signature made in a representative capacity.

6. Mr. Johnson's signature, followed by "for" and then the name of the company, clearly indicates Mr. Johnson's intent to sign in a representative capacity in accordance with the holding in Cone Oil regarding the use and presumptive effect of the words "by" and "for."

7. . . . Mr. Johnson clearly expressed his intent not to be personally obligated by his use of the word "for" when he signed the Lease the second time as follows: "Richard L. Johnson for Mobile Masters Manufacturing, LLC." This is a clear expression of Mr. Johnson's intent to sign in a representative capacity and not a personal capacity. The Court finds as [a] matter of law that Mr. Johnson did not sign the Lease in his personal capacity.

---

[1] At the close of Landlord's case-in-chief, Johnson moved for a directed verdict. As motions for directed verdicts are not appropriate in bench trials, see Burton v. Warren Farmers Co-op, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002), the trial court correctly treated Johnson's motion as one for an involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02, see id.; see also Wilson v. Monroe Cnty., 411 S.W.3d 431, 438-39 (Tenn. Ct. App. 2013). Tennessee Rule of Civil Procedure 41.02 provides that "[a]fter the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant . . . may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Tenn. R. Civ. P. 41.02(2).

On appeal, the majority of the Court of Appeals panel upheld the trial court. MLG Enters., LLC v. Johnson, No. M2014-01205-COA-R3-CV, 2015 WL 4162722, at *1 (Tenn. Ct. App. July 9, 2015), perm. app. granted (Tenn. Dec. 10, 2015). The dissenting judge would have reversed the trial court and held Johnson personally obligated under the Lease. Id. at *8 (McBrayer, J., dissenting). The dissenting judge stated that, viewing the contract as a whole, Johnson's second signature was "clearly intended to bind [him] individually." Id. The dissenting judge also reasoned that construing Johnson's second signature as being in a representative capacity rendered his second signature a nullity. Id.

## Analysis

### Standard of Review

We review a trial court's grant of an involuntary dismissal de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. Shore v. Maple Lane Farms, LLC, 411 S.W.3d 405, 414 (Tenn. 2013). We review the trial court's conclusions of law with no presumption of correctness. Id.

Regarding our review of contracts,

> When we interpret a contract, our role is to ascertain the intention of the parties. The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract. The interpretation of a contract is a matter of law, which we review de novo with no presumption of correctness.

84 Lumber Co. v. Smith, 356 S.W.3d 380, 383 (Tenn. 2011) (citations omitted).

### Effect of Johnson's Second Signature

The precise issue in this case is whether Johnson's second signature was sufficient to bind him individually as a guarantor of Tenant's obligations under the Lease. As we recognized in 84 Lumber, "[t]he Statute of Frauds requires that a contract to pay the debts of another must be signed by the guarantor." Id. at 382 (citing Tenn. Code Ann. § 29-2-101(a)(2) (2000)). As we also recognized in 84 Lumber, "[a] representative who signs a contract may be personally bound . . . when the clear intent of the contract is to bind the representative." Id. (citation omitted). "Whether or not a particular contract shows a clear intent that one of the parties was contracting as an individual or in a representative capacity, must be determined *from the contract itself*." Lazarov v. Klyce, 255 S.W.2d 11, 14 (Tenn. 1953) (citing Pope v. Landy, 1 A.2d 589, 594 (Del. Super. Ct. 1938)).

4

In 84 Lumber, a limited liability company applied for a credit account with 84 Lumber Company. 356 S.W.3d at 381. The credit application contained the following language immediately above the applicant's signature line:

> BY SIGNING BELOW I HEREBY CERTIFY THAT I AM THE OWNER, GENERAL PARTNER OR PRESIDENT OF THE ABOVE BUSINESS, AND I DO UNCONDITIONALLY AND IRREVOCABLY PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND PAYMENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS, AND THAT I HAVE READ ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS APPLICATION AND UNDERSTAND AND AGREE TO THE SAME, AND THAT ALL OF THE INFORMATION CONTAINED IN THIS APPICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Id. at 381-82. Under this provision, the application was signed, "R. Bryan Smith, President." Id. at 382. 84 Lumber accepted the credit application and extended credit to the limited liability company. Id. 84 Lumber subsequently sued both the limited liability company and Smith in his personal capacity to recover principal and interest due under the credit agreement. Id.

The trial court granted 84 Lumber summary judgment as to both the limited liability company and Smith. Id. The Court of Appeals reversed the trial court as to the judgment against Smith, holding that he had signed the credit application only in his representative capacity and, therefore, was not personally liable for the monies owed. Id. This Court, in turn, reversed the Court of Appeals. Id. at 384. We held that the language preceding Smith's signature was "unambiguous" and "establishe[d] that the person signing the application agree[d] to serve as the guarantor of the account established for the benefit of the 'above business.'" Id. at 383.

84 Lumber makes clear that an individual may bind himself as a guarantor even when he signs a contract only once and signs in a manner that depicts himself as a representative of the primary obligor. We reached that conclusion by placing primacy on the actual provisions of the contract over the form of the manner in which it was signed:

> The language in the application is unambiguous. The first sentence states: "BY SIGNING BELOW I HEREBY CERTIFY THAT I AM THE OWNER, GENERAL PARTNER OR PRESIDENT OF THE ABOVE BUSINESS, . . . ." The instructions on the first page of the contract state, "If the Applicant is a corporation, then President must sign the application." The purpose of this language is clear. A non-natural entity can act only

through the authority of a natural person.  The language is a certification that the individual signing the contract has the authority to sign the contract in a representative capacity for the company.

Immediately following this clause is the language, "I DO UNCONDITIONALLY . . . PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND PAYMENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS."  This language is also unambiguous.  It establishes that the person signing the application agrees to serve as the guarantor of the account established for the benefit of the "above business."  The language clearly distinguishes between "I," the person signing the contract, and the "above business."  The contract also contains terms and conditions that apply to both the "applicant" and the "personal guarantor."  These provisions demonstrate that the parties intended that the individual who signed the contract agreed to be personally responsible for amounts owed on the contract.

It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents.  To hold otherwise would make contracts not "'worth the paper on which they are written.'"  In this case, the clear and unambiguous language reflects that Mr. Smith both signed in a representative capacity and personally guaranteed the contract.

Id. (footnote and citations omitted).  We reemphasized our holding:  "The explicit and unambiguous language of the contract points to only one conclusion:  Mr. Smith agreed to be personally responsible for the amounts due on the account."  Id. at 384.  In short, we rejected a form-over-substance construction of the contract.

Similar to the contract at issue in 84 Lumber, the Lease in this case provided explicitly and unambiguously and on the same page of the document as Johnson's two signatures the following clear and simple text:

37. PERSONAL LIABILITY:

In consideration of Landlord entering into this Lease with Tenant, Richard L. Johnson hereby agrees that he shall be personally liable for all of Tenant's obligations under this Lease and executes this Lease for this purpose.

6

Immediately following this provision, Johnson signed the Lease *twice*: once as the designated representative of Tenant, Mobile Master Manufacturing LLC, and once in his personal and individual capacity as Richard L. Johnson, notwithstanding his handwritten "for Mobile Master Mfg. LLC."[2] We hold that any attempt by Johnson to avoid the plain meaning of the explicit provision for personal liability by following his *second* signature with the words "for Mobile Master Mfg. LLC" was not effective to vitiate the clear intent of the Lease "that the individual who signed the contract agreed to be personally responsible for amounts owed on the contract." 84 Lumber, 356 S.W.3d at 383. Accordingly, we hold that Johnson's second signature served to bind him personally for Tenant's obligations under the Lease.[3]

Both the trial court and the majority of the Court of Appeals panel failed to appreciate the significance of Johnson's *second* signature by focusing on the word "for" followed by Tenant's name. As correctly pointed out by the dissent below, "to presume that Mr. Johnson's second signature was in a representative capacity, where it is undisputed that his first signature was in the same capacity, would be to presume that the second signature is a nullity." MLG Enters., 2015 WL 4162722, at *8 (McBrayer, J., dissenting). Moreover, it is nonsensical to construe a contract of guaranty as binding only the primary obligor, who is already obligated on the underlying agreement. See, e.g., Standard Meat Co. v. Taco Kid of Springfield, Inc., 554 S.W.2d 592, 596 (Mo. Ct. App. 1977) (stating that "a guaranty contract signed individually by principals of the corporation if construed to be the corporation's guaranty of its own contract would be redundant, illusory, absurd, and therefore unreasonable" (internal quotation marks and parentheses omitted)); Cone Oil Co. v. Green, 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983) (recognizing that "a guaranty of one's own obligation is an exercise in futility"). We agree with the dissent below that, "[w]here a contract bears two signatures by the same individual, the first of which is undisputedly in a representative capacity, we should

---

[2] We recognize that Johnson's addition of the words "for Mobile Master Mfg. LLC" can be construed in different ways. It is unnecessary to our resolution of this case to determine what Johnson may have been thinking at the time he added the words. See MLG Enters., 2015 WL 4162722, at *8 (McBrayer, J., dissenting) (recognizing that, in construing a contract so as to give effect to the parties' intent, "the hidden, subjective intent of the parties is of no value because the unexpressed intent of one party is not binding on another party without notice") (citing Cone Oil Co. v. Green, 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983)); see also Bill Walker & Assoc. v. Parrish, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989) (recognizing that, in construing a contract, "[w]e are not concerned with the parties' state of mind when they entered into the contract and, therefore, we do not consider their uncommunicated, subjective intentions" (citation omitted)). The clear language of the Lease identifying Johnson as a personal guarantor, rather than Johnson's handwritten notation, controls our interpretation.

[3] Given that Johnson signed the Lease *twice*, the instant contract provides an even stronger argument for a substance-over-form construction than did the contract at issue in 84 Lumber, which contained only a single signature by the liable party.

7

be hesitant to render the second a nullity merely because the party's signature is followed by the word 'for' and the company name." MLG Enters., 2015 WL 4162722, at *8 (McBrayer, J., dissenting); see also Wise N. Shore Props., LLC v. 3 Daughters Media, Inc., No. E2013-01953-COA-R3-CV, 2014 WL 2854258, at *3 (Tenn. Ct. App. June 23, 2014) (holding that corporate representative's second signature to a commercial lease was effective to bind him personally because a contrary construction was illogical and rendered the guaranty provision of no purpose or effect); Kubota Tractor Corp. v. Fugate Implement Co., 1989 WL 57477, at *4 (Tenn. Ct. App. June 2, 1989)[4] (rejecting the interpretation of a signature as being made in a representative capacity where doing so would "render[] th[e] document not only a nullity, but an absurdity"). The majority of the Court of Appeals panel erred by elevating form over substance.

In addition to focusing on the form of Johnson's second signature, the trial court and the majority of the Court of Appeals panel attached significance to the fact that numbered provision 37 of the Lease was not "set off, indented, in all capital letters, or in the first person." MLG Enters., 2015 WL 4162722, at *7. Our holding in 84 Lumber was not based on any of those grammatical or typesetting details. We disagree that a personal guaranty provision in a commercial lease agreement between two businesses and an individual associated with one of the businesses must meet any of those criteria in order to be enforceable.

The majority of the Court of Appeals panel also attached significance to the fact that Johnson's second signature was not "immediately preceded by the words 'PERSONALLY GUARANTEED BY.'" MLG Enters., 2015 WL 4162722, at *7. Again, we disagree that a personal guaranty provision in a commercial lease agreement between two businesses and an individual associated with one of the businesses must meet this criterion in order to be enforceable.

Finally, both the trial court and the majority of the Court of Appeals panel emphasized that "the handwritten words accompanying Mr. Johnson's second signature clearly indicated his intent to sign in a representative capacity and, therefore, he was entitled to the rebuttable presumption that his signature was representative." Id. at *6. Moreover, according to the majority of the Court of Appeals panel, "[t]he trial court also correctly concluded that [Landlord] did not introduce evidence sufficient to overcome that presumption." Id. at *7. As authority for the "rebuttable presumption," the Court of Appeals cited to Cone Oil, 669 S.W.2d at 664, and Creekside Partners v. Scott, No. M2012-00623-COA-R3-CV, 2013 WL 139573, at *3 (Tenn. Ct. App. Jan. 10, 2013). See MLG Enters., 2015 WL 4162722, at *6-7.

---

[4] The Westlaw database version of this appellate opinion does not contain an appellate docket number.

In Cone Oil, the Court of Appeals considered a document titled "Continuing Guaranty" that provided, in pertinent part, as follows:

> [I]n consideration of the credit extended and/or monies loaned, or to be extended or loaned to *SAFETY SIGNAL OF TENNESSEE, INC.* hereinafter referred to as BORROWER, the undersigned jointly and severally if more than one, hereby absolutely and unconditionally guarantee prompt payment when due at all times thereafter of any and all existing and future indebtedness and inability of every kind, nature, and character (including all renewals, extensions, and modifications thereof) from BORROWER to *CONE OIL CO., INC. . . . .*

669 S.W.2d at 663. Although the document contained two lines for signatures of guarantors, the first line bore the handwritten signature "Thomas E. Green." Id. On the second line, the words "President, Safety Signal of Tenn." were printed by hand in ink. Id. The intermediate appellate court referred to "the presumptive effect" that a corporate officer signs only in his representative capacity when his signature is preceded by the name of the corporation and the term "by" or "per." Id. at 664. The court then held that "[t]he omission of the word 'for' from the signature . . . prevents the signature from clearly indicating the representative character of the signature of [Green]." Id. at 665. Accordingly, the Court of Appeals held that Green was personally liable for the obligation of the principal obligor, Safety Signal of Tennessee. Id. We note that a contrary holding, no matter the form of the signature, would have rendered the document a nullity. Indeed, the Court of Appeals recognized this in its decision, stating that "[a] guaranty obligating only the corporation would not in any way add security to the obligation of the corporation, because the corporation was already fully obligated as principal." Id. at 664.

Creekside Partners, unlike the instant case, dealt with a commercial lease involving only one signature by the individual sought to be held liable. 2013 WL 139573, at *1. The lease agreement contained a clause providing that "the undersigned Albert Nathan Scott, does hereby guarantee and become primarily liable as a co-Tenant." Id. at *2. Scott signed the agreement a single time. Id. at *1. His signature line was preceded by the designation of NTS Enterprises, Inc. as the "Tenant" and by the term "By:." Id. Scott's signature then appears followed by the words "Its: President." Id. Relying on the presumption it discerned in Cone Oil, the Court of Appeals held that,

> because Mr. Scott's only signature appears immediately after the word "BY" and immediately before "Its: President," the intention of the parties is self evident from the form of the signature: Mr. Scott signed only in his

9

representative capacity, not as a personal guarantor, and as a result, only the corporation, NTS, is obligated under the Lease.

Id. at *4. The Court of Appeals distinguished 84 Lumber by noting that, in the Creekside Partners lease agreement, "the guaranty provision is in the same size font as all the other provisions in the lease and is separated from Mr. Scott's signature by two pages." Id. at *5. The Court of Appeals also opined that "Mr. Scott's alleged personal obligation under the Lease is in contradiction to other provisions in the Lease," and that, "[although] page eleven of the Lease provides that, '[n]otices to any guarantor shall be deemed sent when sent to the address shown on the signatory page hereof,' yet no addresses for guarantors are listed." Id. The Court of Appeals concluded that "the Lease does not show a clear intent that Mr. Scott was contracting as an individual guarantor of [the tenant's] obligations." Id. at *6. It appears that no application for permission to appeal to this Court was filed in Creekside Partners.

We disagree with the lower courts' reliance on Creekside Partners as authority for their conclusion that Johnson's second signature was not effective to bind him personally. We reiterate that the commercial lease at issue in Creekside Partners was signed only a single time by the individual representing the tenant. The instant case is clearly distinguishable because of Johnson's second signature.

Moreover, we need not determine in this case the efficacy of the presumption referred to in Cone Oil and relied upon in Creekside Partners. Unlike those cases, this case involves a contract signed *twice* by the party resisting the claim of liability. Under these circumstances, we decline to adopt any type of rebuttable presumption in cases involving two signatures.[5]

Here, it is clear that the Lease contemplated signatures by *both* Tenant and Johnson. Indeed, Johnson signed the Lease twice, as contemplated: first in his representative capacity on behalf of Tenant and then in his individual capacity as the guarantor of Tenant's obligations. As indicated above, Johnson's second signature was not preceded by Tenant's name, and Johnson's handwritten notation "for Mobile Master Mfg. LLC" was not effective to eradicate or contravene the plain and clear intent of numbered paragraph 37. We reiterate: "[A]n individual who signs a contract is presumed to have read the contract and is bound by its contents." 84 Lumber, 356 S.W.3d at 383 (citations omitted).

---

[5] We also expressly reserve the issue of the applicability of any such presumption in cases involving a single signature. We do note that, although the issue was not directly addressed, this Court did not adopt any type of a rebuttable presumption in 84 Lumber.

In sum, we hold that Johnson's second signature served to bind him as personally liable for Tenant's obligations under the Lease.

## **Conclusion**

The trial court erred when it dismissed Landlord's claim against Johnson, and the Court of Appeals erred when it affirmed the trial court's judgment. We reverse the lower courts' judgments, reinstate Landlord's claim against Johnson, and remand this matter for further proceedings consistent with this decision. The costs of this appeal are taxed to Johnson and his sureties, for which execution may issue if necessary.

_____
JEFFREY S. BIVINS, JUSTICE