IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2024 Session

**JAMES L. DAVISON ET AL. v. JEREMY HOWARD JOHNSON ET AL.**

**Appeal from the Chancery Court for Rutherford County**
**No. 22CV-373        Bonita Jo Atwood, Judge**

_____

**No. M2024-00412-COA-R3-CV**

_____

Appellants filed a complaint for declaratory judgment and breach of contract to enforce a purchase and sale agreement, which was allegedly entered by and between Appellants and Appellees.  In their answer, Appellees asserted, as an affirmative defense, that Appellants had no standing to enforce the contract because they were not parties to it.  On Appellees' motion for summary judgment, the trial court concluded that Appellants were not parties to the contract and had no standing to bring an action to enforce it.  Discerning no error, we affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

R.H. Pursell and Edward A. Hadley, Nashville, Tennessee, for the appellants, James L. Davison, and Rachel B. Davison.

L. Gilbert Anglin and L. Garrett Anglin, Murfreesboro, Tennessee, for the appellees, Jeremy Howard Johnson, and Brandi Lee Johnson.

**OPINION**

**I. Background**

On November 24, 2021, James L. Davison and Rachel B. Davison (together, "Appellants") signed a Purchase and Sale Agreement (the "Agreement") for property located at 5740 Johnson Road in Murfreesboro, Tennessee (the "Property").  Although Appellants signed the Agreement above the "Buyer" signature lines, they were not listed

as the "Buyer[s]" in the body of the Agreement; the Davison Family Trust (the "Trust") was listed as the "Buyer." While Appellants are co-trustees of the Trust, there is no language to indicate that they signed the Agreement in their fiduciary capacity. In the Agreement, the sellers were listed as Jeremy Howard Johnson and Brandi Lee Johnson (together, "Appellees").[1]

On November 29, 2021, Appellees informed the Trust/Appellants that Appellees were unwilling to move forward with the sale of the Property. On January 13, 2022, Appellees re-asserted that they were not selling the Property. On January 18, 2022, Appellants' attorney sent a letter to Appellees' attorney asserting that a valid contract for sale existed between Appellants, individually, and Appellees. On January 21, 2022, Appellees' attorney responded to the letter stating that there was no binding and enforceable contract between these parties.

On March 4, 2022, Appellants filed a complaint for declaratory judgment and breach of contract in the Chancery Court for Rutherford County, Tennessee (the "trial court"). Therein, Appellants alleged that they submitted the Agreement to Appellees and Appellees accepted Appellants' offer to purchase the Property. Appellants also alleged that they were purchasing the Property in their individual capacity. Furthermore, they alleged that there was a genuine dispute concerning the "proper construction of the language and meaning of the Agreement" and asked the trial court to determine that a valid and enforceable agreement existed between the parties. Appellants also alleged that Appellees breached the enforceable agreement by refusing to allow various inspections of the Property and by failing to close on the sale of the Property. Appellants asked the trial to order specific performance of the Agreement, requiring Appellees to sell the Property to Appellants. In the alternative, Appellants asked for damages of $500,000.00.

On May 10, 2022, Appellees filed an answer denying that a valid and binding contract existed between the parties. As an affirmative defense, Appellees also asserted that Appellants lacked standing to bring the cause of action because the Trust, as opposed to the Appellants individually, was the "Buyer".

On May 4, 2023, Appellees filed a motion for summary judgment arguing that Appellants lacked standing to sue to enforce the Agreement on behalf of themselves individually because they were not parties to the Agreement. On June 5, 2023, Appellants filed a response to the motion. In the response, Appellants agreed that summary judgment was appropriate, but they argued that the trial court should conclude that Appellants, individually, were the buyers under the Agreement. As such, Appellants argued that the

---

[1] Although it appears that Mr. Johnson accepted the offer to purchase by his signature on the Agreement, the parties debate whether Ms. Johnson accepted the offer. Ms. Johnson's signature does not appear within the box stating that the seller accepts the offer; rather, her signature appears next to the line showing that she acknowledged receipt of the Agreement. Whether Ms. Johnson accepted the offer is not at issue in this appeal.

trial court should enforce the Agreement. Alternatively, Appellants cited Tennessee Code Annotated section 35-15-1010(a) for the proposition that, even if the Trust was the buyer, Appellants had personal liability under the Agreement and, as such, had standing to enforce it. Appellants argued that, if they had personal liability under the Agreement, they had standing to enforce it.

On September 28, 2023, the trial court heard the motion for summary judgment. On October 4, 2023, Appellees submitted additional briefing. On October 13, 2023, Appellants filed a response to same.

By order entered February 20, 2024, the trial court granted Appellees' motion for summary judgment. Relying on ***Shams Properties, LLC v. All Natural Lawns & Landscapes, LLC***, No. M2021-01543-COA-R3-CV, 2023 WL 2998872 (Tenn. Ct. App. Apr. 19, 2023), discussed further *infra*, the trial court concluded that the language in the Agreement was clear and unambiguous and did not indicate that Appellants, individually, were the buyers. Rather, the trial court concluded that the Trust was the buyer. Because the Agreement was clear and unambiguous, the trial court did not look beyond its four corners and concluded that Appellants did not have standing to enforce the Agreement. The trial court also found Appellants' alternative argument concerning Tennessee Code Annotated section 35-15-1010(a) to be unpersuasive. Specifically, the trial court concluded that "[t]here is no case law that stands for [Appellants' alternative argument] and [found] that in the context of trust law, there is a difference between having personal liability under a contract and having standing to enforce it when a trustee fails to disclose their fiduciary capacity." Appellants filed a timely appeal.

## II. Issues

Appellants raise three issues for review, as stated in their brief:

1. Whether the trial court erred by ruling as a matter of law that T.C.A. 35-15-1010(a) is inapplicable to this case.

2. Whether a trustee who signs a contract is personally liable on the contract pursuant to T.C.A. 35-15-1010(a) when the trustee does not indicate the trustee's fiduciary capacity in the agreement.

3. Whether the trial court erred as a matter of law in finding the contract clear and unambiguous and not considering extrinsic evidence to determine the intentions and the parties to the agreement.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question

of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Green v. Green***, 293 S.W.3d 493, 514 (Tenn. 2009). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." ***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "When a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co.,*** [***Ltd. v. Zenith Radio Corp***.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

***Rye***, 477 S.W.3d at 265. With the foregoing in mind, we turn to the substantive issues.

## IV. Analysis

Here, the core issue is whether Appellants had standing to file a complaint for declaratory judgment and breach of contract to enforce the Agreement. Under the Declaratory Judgment Act, a court has "the power to declare rights, status, and other legal relations[.]" Tenn. Code Ann. § 29-14-102(a). "Any person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." Tenn. Code Ann. § 29-14-103. In short, a complaint for a declaratory judgment asks a court to "proclaim the rights of the litigants without ordering execution or performance." ***Colonial Pipeline Co. v. Morgan***, 263 S.W.3d 827, 837 (Tenn. 2008) (citing 26 C.J.S. *Declaratory Judgments* § 1 (2001)). "'[A] plaintiff seeking a declaratory judgment 'must allege facts [in the complaint] which show he [or she] has a real, as

contrasted with a theoretical, interest in the question to be decided and that he [or she] is seeking to vindicate an existing right under presently existing facts.'"" ***Reguli v. Guffee***, No. M2015-00188-COA-R3-CV, 2016 WL 6427860, at \*3 (Tenn. Ct. App. Oct. 28, 2016) (quoting ***Johnston v. Swing***, No. M2012-01760-COA-R3-CV, 2013 WL 3941026, at \*5 (Tenn. Ct. App. July 26, 2013) (quoting ***Burkett v. Ashley***, 535 S.W.2d 332, 333 (Tenn. 1976))).

The justiciability doctrine of standing is a threshold requirement for declaratory judgment actions and is a viable defense to such actions. *See* ***Colonial Pipeline Co.***, 263 S.W.3d at 838; ***Reguli***, 2016 WL 6427860, at \*2. "The doctrine of standing is used to determine whether a particular plaintiff is entitled to judicial relief." ***Wood v. Metro. Nashville & Davidson Cnty. Gov't***, 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005) (citing ***Knierim v. Leatherwood***, 542 S.W.2d 806, 808 (Tenn. 1976); ***Garrison v. Stamps***, 109 S.W.3d 374, 377 (Tenn. Ct. App. 2003)). As this Court has explained:

> [The doctrine of standing] requires the court to determine ***whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation*** to warrant a judicial resolution of the dispute. ***SunTrust Bank v. Johnson***, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000); ***Browning-Ferris Indus. of Tennessee, Inc. v. City of Oak Ridge***, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982). To establish standing, ***a plaintiff must show: (1) that it has sustained a distinct and palpable injury***, (2) that the injury was caused by the challenged conduct, and (3) that the injury is one that can be addressed by a remedy that the court is empowered to give. ***City of Chattanooga v. Davis***, 54 S.W.3d 248, 280 (Tenn. 2001); ***In re Youngblood***, 895 S.W.2d 322, 326 (Tenn. 1995); ***Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't***, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992).

***City of Brentwood v. Metro. Bd. of Zoning Appeals***, 149 S.W.3d 49, 55-56 (Tenn. Ct. App. 2004) (emphases added).

Concerning standing in the context of a contract dispute, "'[g]enerally, contracts are presumed to be 'executed for the benefit of the parties thereto and not third persons.'" ***Elvis Presley Enterprises, Inc. v. City of Memphis***, No. W2019-00299-COA-R3-CV, 2022 WL 854860, at \*9 (Tenn. Ct. App. Mar. 23, 2022) (quoting ***Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.***, 59 S.W.3d 63, 68 (Tenn. 2001) (quoting ***Oman Constr. Co. v. Tenn. Cent. Ry. Co.***, 370 S.W.2d 563, 572 (Tenn. 1963))). Although a third party may seek to recover under a contract, "'the third party bears the burden of proving, from the terms of the contract or the circumstances surrounding its execution, that, *at the time of contracting*, he [or she] was an intended third-party beneficiary of the contract.'" ***Elvis Presley Enterprises, Inc.***, 2022 WL 854860, at \*9 (quoting ***Wallis v. Brainerd Baptist Church***, 509 S.W.3d 886, 899 (Tenn. 2016)) (emphasis in original). Turning to Appellants' complaint, they make no argument that they are third-party beneficiaries of the

Agreement. Rather, their entire argument centers on Appellants, individually, being parties to the Agreement. Accordingly, the question is whether Appellants, individually, were parties to the Agreement. If they were not, then they have failed to allege "a sufficiently personal stake in the outcome of the litigation" and have no standing to enforce the Agreement. *City of Brentwood*, 149 S.W.3d at 55 (internal citations omitted).

The trial court correctly noted that the Agreement is a contract and applied the rules of contract interpretation. Concerning contract interpretation, this Court has explained:

> It is a long-held canon of contract interpretation that when the contractual language of an agreement is clear and unambiguous, the literal meaning controls the outcome of the dispute. *E.g. Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *Eleogrammenos v. Standard Life Ins. Co.*, 149 S.W.2d 69 (Tenn. 1941). In the recent case of *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671 (Tenn. 2019), the Tennessee Supreme Court examined Tennessee jurisprudence with respect to the interpretation of contracts. The Court stated that, "[T]he cardinal rule upon which all other rules hinge is that courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles." 566 S.W.3d at 688. The Court further emphasized that the "sole object" of the rules of contract construction is "'to do justice between the parties, by enforcing a performance of their agreement according to the sense in which they mutually understood it **at the time it was made**.'" *Id.* (quoting *McNairy v. Thompson*, 33 Tenn. 141, 149 (1853)) (other citations omitted) (emphasis added). To this end, Tennessee courts "demonstrate a definite focus on the written words in the parties' contract, but they also consider evidence related to the situation of the parties and the circumstances of the transaction in interpreting those words." *Id.* at 692. Nonetheless, the Court noted that there is a "strong strain of textualism in Tennessee caselaw [that] demonstrates [a] resolve to keep the written words as the lodestar of contract interpretation." *Id.* at 694 (collecting cases). The Court concluded that "Tennessee courts 'give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute.' " *Id.* (quoting Feldman, 21 Tenn. Practice § 8:14).

*Moorehead v. Tennessee Farmers Mut. Ins. Co.*, No. M2020-01319-COA-R3-CV, 2021 WL 2935454, at *4 (Tenn. Ct. App. July 13, 2021). Courts are to look beyond the four corners of a contract only when the language in a contract is unclear or ambiguous. *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("An

elementary precept of contract law, however, is that a court will not look beyond the four corners of a contract or to the parties' intention when the language of the contract is clear.") (citations omitted).

The trial court relied on the reasoning in **Shams Properties** when it concluded that the clear and unambiguous language of the Agreement showed that Appellants were not the "buyers." **Shams Properties** involved a dispute over a written commercial lease/purchase agreement between a landlord and a tenant. 2023 WL 2998872, at *1. The opening sentence of the lease identified the landlord as Mohammed Shams and the tenant as All Natural Lawn and Landscapes, LLC ("All Natural"). **Id.** The lease set out the rights and obligations of the landlord and the tenant, and All Natural was the only entity identified as the tenant in the lease. **Id.** On the last page of the lease, the signatures of Mr. Shams and Tanya Hans, a member of All Natural, appeared as shown below:

**Id.** at *2. Relevant here, a few years after the landlord and the tenant entered into the lease, All Natural was administratively dissolved, but Ms. Hans continued to pay rent and operated a landscaping and gardening business on the property. **Id.** Years later, Ms. Hans incorporated said business as A Greener Way, LLC ("Greener Way"). **Id.** Ms. Hans never requested or received written consent from the landlord to assign the lease to her, individually, or to Greener Way. **Id.** Ten years later, the landlord sought to terminate the lease, and Ms. Hans refused to vacate the property. **Id.** Relevant here, the landlord filed a detainer warrant to recover possession of the property, and Ms. Hans filed a counter-complaint seeking specific performance of the purchase option in the lease. **Id.** The landlord filed an answer to the counter complaint and an amended petition for declaratory judgment concerning whether the lease gave Ms. Hans a contractual right to exercise the option to purchase the property in her individual capacity. **Id.** Relevant here, the landlord filed a motion for summary judgment, arguing that Ms. Hans could not have exercised the purchase option because she was not a party to the lease. **Id.** at *3. The trial court granted the landlord's motion for summary judgment, concluding that Ms. Hans, in her individual capacity, was not a party to the lease because the lease clearly showed that All Natural was the tenant, and the option to purchase was never assigned to Ms. Hans. **Id.**

Noting that Tennessee courts have previously considered the issue of whether a person signs a document in an individual or representative capacity, the **Shams Properties**

Court quoted *In re Estate of Dickerson*, 600 S.W.2d 714 (Tenn. 1980), for the proposition that

> [w]here an agreement naming in the body of the instrument the parties bound thereby is signed by a third person not named therein, he [or she] cannot be regarded as one of the principal obligors, and the question has frequently arisen as to whether this constitutes a sufficient memorandum to bind him [or her] as a guarantor or surety for the parties named. In such a case, since oral evidence is necessary to show the undertaking of a person so signing, it is generally held that there is not a sufficient memorandum of an agreement to become surety or guarantor. Thus, where a person not named in a lease as a party thereto signs the lease, it is held that to allow his [or her] liability as a guarantor for the lessee to be established by oral evidence would be violative of the statute [of frauds].

*Shams Properties*, 2023 WL 2998872, at *5 (quoting *In re Estate of Dickerson*, 600 S.W.2d at 717 (quoting 72 Am. Jur. 2d *Statute of Frauds* § 316 (1974))). The *Shams Properties* Court went on to consider other cases involving similar issues. *Shams Properties*, 2023 WL 2998872, at *5. The *Shams Properties* Court recognized that Tennessee courts analyze the *substance* of contract provisions, *i.e.,* the language used in a contract, over the *form*, *i.e.,* the way in which such contracts are signed. First, the Court cited *84 Lumber Company v. Smith*, 356 S.W.3d 380 (Tenn. 2011), finding that the Tennessee Supreme Court "plac[ed] more significance on the language of the application than on how [a party] signed it." *Shams Properties*, 2023 WL 2998872, at *5.[2] Indeed, in *84 Lumber*, the Tennessee Supreme Court explained that "[i]n most cases, a representative who signs a contract is not personally bound to the contract," but he or she "may be personally bound . . . when the clear intent of the contract is to bind the representative." *84 Lumber Co.*, 356 S.W.3d at 382-83. Such intent must be determined from the contract

_____

[2] At issue in *84 Lumber* was the following language immediately above the signature line:

> BY SIGNING BELOW I HEREBY CERTIFY THAT I AM THE OWNER, GENERAL PARTNER OR PRESIDENT OF THE ABOVE BUSINESS, AND I DO UNCONDITIONALLY AND IRREVOCABLY PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND PAYMENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS, AND THAT I HAVE READ ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS APPLICATION AND UNDERSTAND AND AGREE TO THE SAME, AND THAT ALL OF THE INFORMATION CONTAINED IN THIS APPLICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

*84 Lumber Co.*, 356 S.W.3d at 381-82 (capitalization in original). The Supreme Court concluded that the foregoing language was unambiguous and established that the individual signing the application agreed to serve as the guarantor of the account. *Id.* at 383. The Supreme Court also noted other provisions in the contract concerning terms and conditions that applied to both the "applicant" and the "personal guarantor." *Id.* From such language, the Supreme Court concluded that "the parties intended that the individual who signed the contract agreed to be personally responsible for amounts owed on the contract." *Id.*

itself. *Id.* The ***Shams Properties*** Court then turned to ***MLG Enterprises, LLC v. Johnson***, 507 S.W.3d 183 (Tenn. 2016), decided five years after ***84 Lumber***. The ***Shams Properties*** Court noted that the Tennessee Supreme Court was "[c]ontinuing to develop the substance-over-form principle set forth in ***84 Lumber***," when it focused on the lease's personal liability provision and concluded that an individual's second signature bound him personally for the tenant's obligations. ***Shams Properties***, 2023 WL 2998872, at *6 (citing ***MLG Enterprises, LLC***, 507 S.W.3d at 188). "As the [***MLG Enterprises***] Court explained, 'any attempt by [the individual] to avoid the plain meaning of the explicit provision for personal liability by following his *second* signature with the words 'for Mobile Master Mfg. LLC' was not effective to vitiate the clear intent of the Lease 'that the individual who signed the contract agreed to be personally responsible for amounts owed on the contract.'" ***Shams Properties***, 2023 WL 2998872, at *6 (citing ***MLG Enterprises, LLC***, 507 S.W.3d at 188) (quoting ***84 Lumber***, 356 S.W.3d at 383)).[3]

Applying the substance-over-form principle, the ***Shams Properties*** Court concluded that the clear and unambiguous language of the lease demonstrated that the parties did not intend for Ms. Hans to have a right to exercise the option to purchase because the lease explicitly identified only All Natural as the tenant. ***Shams Properties***, 2023 WL 2998872, at *7. Differentiating the lease from the contracts at issue in ***84 Lumber*** and ***MLG Enterprises***, the ***Shams Properties*** Court explained that the lease contained "no language providing Ms. Hans with any personal rights or requiring her to personally assume any obligations." *Id.* "Furthermore, unlike the contracts at issue in ***84 Lumber*** and ***MLG Enterprises***, the provisions of the [l]ease ma[d]e no reference whatsoever to Ms. Hans." *Id.*

Turning back to the instant case, relying on ***Shams Properties***, the trial court concluded that Appellants "merely initialed and signed the Agreement" and that the "clear and unambiguous language of the Agreement does not indicate that [Appellants] were buyers under the Agreement." Accordingly, the trial court concluded that Appellants did not have standing to enforce it. We agree. The first paragraph of the Agreement reads:

> **1. Purchase and Sale.** For and in consideration of the mutual covenants herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned buyer <u>Davison Family Trust</u> ("Buyer") agrees to buy and the undersigned seller <u>Jeremy Howard</u>

---

[3] At issue in ***MLG Enterprises*** was the following language immediately above the signature line:

> In consideration of Landlord entering into this Lease with Tenant, Richard L. Johnson hereby agrees that he shall be personally liable for all of Tenant's obligations under this Lease and executes this Lease for this purpose.

***MLG Enterprises, LLC***, 507 S.W.3d at 187-88.

Johnson and Brandi Lee Johnson ("Seller") agrees to sell all that tract or parcel of land, with such improvements as are located thereon, described as follows: All that tract of land known as: 5740 Johnson Rd (Address) Murfreesboro (City), Tennessee, 37127 (Zip)[.]

The Davison Family Trust is mentioned twice more in the Agreement. First, the Agreement provides that the name on the deed to the Property would be listed as "Davison Family Trust." *See* Tenn. Code Ann. § 35-15-114(a) ("An estate in real property may be acquired in the name of the trust . . . ."). Second, the Agreement provides that the Davison Family Trust would purchase a limited home-protection plan to be funded at closing. Appellants' names appear only via their signatures and initials at the end of the contract above the word "Buyer" as shown below:

**WIRE FRAUD WARNING: Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. Never wire money without double-checking that the wiring instructions are correct. NEVER ACCEPT WIRING INSTRUCTIONS FROM YOUR AGENT OR BROKER.** [☑] **Buyer Initials** [☑] **Buyer Initials**

Buyer hereby makes this offer.

| *James L Davison* | dotloop verified 11/24/21 3:45 PM CST 4SVS-68EH-Y5GY-POZ2 | *Rachel B. Davison* | dotloop verified 11/24/21 3:42 PM CST I76N-YUVG-FM5T-I870 |
| **BUYER** | | **BUYER** | |

11/24/2021   at   o'clock ☐am/ ☐pm    11/24/2021   at   o'clock ☐am/ ☐pm
**Offer Date**                          **Offer Date**

On review, there is no language in the Agreement that would indicate that Appellants were purchasing the Property in their individual capacity or that they had any individual interest in the Property. Indeed, the Agreement never references Appellants. Applying the substance-over-form principles discussed above, we agree with the trial court that the clear and unambiguous language of the Agreement demonstrates that the parties did not intend for the Agreement to be between Appellees and Appellants, individually.[4] Rather, the language indicates that the Agreement was entered by and between Appellees and the Trust, and that Appellants signed their names and initials as trustees of the Trust, even if they made no such designation next to their signatures. This interpretation conforms to our case law, which instructs that we analyze the substance of a contract's provisions, *i.e.,* the language used, rather than the form, *i.e.,* the way in which it is signed. ***Shams Properties***, 2023 WL 2998872, at *6. Accordingly, we conclude that Appellants, individually, were not parties to the Agreement. Because they were not parties to the Agreement, Appellants do not have a "sufficiently personal stake in the outcome of the litigation." ***City of Brentwood***, 149 S.W.3d at 55. In short, the trial court correctly determined that Appellants

---

[4] Given that the language in the contract was clear and unambiguous, the trial court was correct not to consider any evidence beyond the four corners of the contract. *See **Whitehaven Cmty. Baptist Church***, 973 S.W.2d at 596.

- 10 -

did not have standing to bring this lawsuit.[5]

Despite the foregoing, Appellants argue that Tennessee Code Annotated section 35-15-1010(a) confers standing on them to enforce the Agreement. Issues involving statutory interpretation present questions of law, *In re Estate of Stringfield*, 283 S.W.3d 832, 834 (Tenn. Ct. App. 2008), which we review *de novo* with no presumption of correctness. *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008). When applying any statute, a court's duty is to ascertain and fully effectuate the "legislative intent [of the statute], taking care not to broaden [it] beyond its intended scope . . . ." *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)). As the Tennessee Supreme Court has explained, "[o]ur analysis naturally begins with the words used in the statute," *Womack*, 448 S.W.3d at 366 (citing *Shore*, 411 S.W.3d at 420), and we must interpret those words under their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

We note that, in 2004, the Tennessee Legislature adopted the Uniform Trust Code ("UTC") to establish "a comprehensive code to govern trusts." *Williams v. Hardison*, No. M2022-01596-COA-R3-CV, 2024 WL 3657990, at *8 (Tenn. Ct. App. Aug. 6, 2024) (quoting *Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 113 n.18 (Tenn. Ct. App. 2005)). Tennessee Code Annotated section 35-15-1010(a) mirrors section 1010(a) of the UTC. *See* Unif. Trust Code 2000 § 1010(a). Relevant here, section 35-15-1010(a) provides:

> Except as otherwise provided in the contract, *a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administering the trust if the trustee in the contract disclosed the fiduciary capacity*.

Tenn. Code Ann. § 35-15-1010(a). Appellants argue that this section of the statute provides that "[a] trustee must disclose the trustee's fiduciary capacity in the contract to avoid personal liability under the contract." Appellants further argue that, because "there is no language in or around [Appellants'] signatures designating any fiduciary or representative capacity . . . [Appellants] would have personal liability under the Agreement, and therefore have standing to enforce the Agreement." We do not interpret the foregoing language in the same manner as Appellants.

As the trial court explained, personal liability and standing are two distinct concepts. This case focuses on whether Appellants had standing to bring a lawsuit to enforce the

---

[5] The question of whether Appellants would have standing in a separate suit seeking the earnest money they paid is outside the scope of this appeal.

Agreement. As discussed at length above, we conclude they did not, and a review of section 35-15-1010(a) does not persuade us otherwise. Turning to the words the Legislature used, we first note that the title of section 35-15-1010 reads: "Limitation on personal liability of trustee." Tenn. Code Ann. § 35-15-1010. From the title alone, it appears that the Legislature intended to employ section 35-15-1010 to limit a trustee's personal liability. Indeed, subsection (a) provides that a trustee is not personally liable on a contract when he or she entered into it in the trustee's fiduciary capacity while administering the trust if the trustee disclosed such fiduciary capacity. Tenn. Code Ann. § 35-15-1010(a). Subsections (b) and (c) also limit a trustee's personal liability under certain circumstances. Subsection (b) provides that the "debts, obligations and liabilities incurred by a trustee by reason of the ownership, management or control of trust property in the trustee's fiduciary capacity" are enforceable only against the trust without personal liability being borne by the trustee. Tenn. Code Ann. § 35-15-1010(b). Similarly, subsection (c) allows personal liability against a trustee for torts committed while administering the trust only if the trustee is personally at fault due to the trustee's willful misconduct. Tenn. Code Ann. § 35-15-1010(c).[6] Nowhere in the statute does the Legislature address a trustee's rights or standing to enforce a contract as Appellants argue and such interpretation would have us broaden the statute beyond the Legislature's intended scope. *Womack*, 448 S.W.3d at 366 (citing *Shore*, 411 S.W.3d at 420; *Carter*, 279 S.W.3d at 564).

Tennessee case law interpreting section 35-15-1010 is limited, and the cases that cite the statute are not helpful to our analysis. However, the official comments to the statute lend some insight into how we should interpret it. Although official comments are not binding, they are very persuasive in interpreting the statute to which they apply, and we give them substantial deference. *LeTellier v. LeTellier*, 40 S.W.3d 490, 493, n.2 (Tenn. 2001). The comments first provide that section 35-15-1010 "generally provides more protection against personal liability of a trustee than does the [UTC]." Tenn. Code Ann. § 35-15-1010(a), official comment. This comment lends further support to the presumption that the Legislature's intended purpose in enacting section 35-15-1010(a) is to protect trustees from personal liability. The comments also provide:

> This section is based on section 7-306 of the Uniform Probate Code.[7] However, unlike the Uniform Probate Code, which requires that the contract

---

[6] For completeness, we note that section 35-15-1010(d) provides:

> A claim based on a contract entered into by a trustee in the trustee's fiduciary capacity, on an obligation arising from ownership or control of trust property, or on a tort committed in the course of administering a trust, may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim.

Tenn. Code Ann. § 35-15-1010(d).

[7] Article VII of the Uniform Probate Code addressed selected issues of trust administration, including trust

both disclose the representative capacity and identify the trust, *__subsection (a)__*
*__protects a trustee who reveals the fiduciary relationship either by indicating__*
*__a signature as trustee or by simply referring to the trust__*. The protection
afforded the trustee by this section applies only to contracts that are properly
entered into in the trustee's fiduciary capacity, meaning that the trustee is
exercising an available power and is not violating a duty.

Tenn. Code Ann. § 35-15-1010(a), official comment (emphasis added). The foregoing
comment demonstrates the Legislature's intention to provide broad protection to trustees.
Rather than requiring that a contract identify the trust *and* that the trustee identify their
representative capacity, section 35-15-1010(a) allows the trustee to complete one *or* the
other.

As discussed above, the substance of the Agreement shows that Appellants entered
into it in their representative capacities as trustees of the Trust. Although Appellants did
not sign their names "as trustees" of the Trust, the Trust is *referenced throughout the*
*Agreement*. So, while Tennessee Code Annotated section 35-15-1010(a) *could* apply to
protect Appellants from personal liability, it cannot be used to confer standing on them to
enforce the Agreement in their individual capacities.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded
for such further proceedings as may be necessary and are consistent with this opinion.
Costs of the appeal are assessed to the Appellants, James L. Davison and Rachel B.
Davison. Execution for costs may issue if necessary.

   s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

---

registration, the jurisdiction of the courts concerning trusts, and the duties and liabilities of trustees. The
Uniform Trust Code was approved in 2000. In 2010, following the widespread enactment of the Uniform
Trust Code, Article VII of the Uniform Probate Code was withdrawn.